Slip Op. 19-165

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,**<br><br>      **Plaintiff,**<br><br>**and**<br><br>**THAI PREMIUM PIPE COMPANY, LTD. and PACIFIC PIPE PUBLIC COMPANY LIMITED,**<br><br>      **Consolidated Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>      **Defendant,**<br><br>**and**<br><br>**WHEATLAND TUBE COMPANY,**<br><br>      **Defendant-Intervenor.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Consol. Court No. 18-00214** |

## <u>OPINION</u>

[Remanding the U.S. Department of Commerce's final results in the 2016–2017 administrative review of the antidumping duty order covering circular welded carbon steel pipes and tubes from Thailand.]

Dated: December 18, 2019

<u>Daniel L. Porter</u>, <u>Christopher Dunn</u>, <u>Tung Nguyen</u>, and <u>Kimberly Reynolds</u>, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiff Saha Thai Steel Pipe Public Company Limited.

<u>Robert G. Gosselink</u>, <u>Jonathan M. Freed</u>, and <u>Aqmar Rahman</u>, Trade Pacific, PLLC, of Washington, DC, for Consolidated Plaintiff Thai Premium Pipe Company, Ltd.

Lizbeth R. Levinson, Ronald M. Wisla, and Brittney R. Powell, Fox Rothschild LLP, of Washington, DC, for Consolidated Plaintiff Pacific Pipe Public Company Limited.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director.  Of counsel on the brief was Brandon J. Custard, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Roger B. Schagrin, Elizabeth J. Drake, Christopher T. Cloutier, and Luke A. Meisner, Schagrin Associates, of Washington, DC, for Defendant-Intervenor Wheatland Tube Company.


Choe-Groves, Judge:  Plaintiff Saha Thai Steel Pipe Public Company Limited

("Saha Thai") and Consolidated Plaintiffs Thai Premium Pipe Company, Ltd. ("Thai Premium")

and Pacific Pipe Public Company Limited ("Pacific Pipe") (collectively, "Plaintiffs") challenge

the U.S. Department of Commerce's ("Commerce") final results in the March 1, 2016 to

February 28, 2017 administrative review of the antidumping duty order on circular welded

carbon steel pipes and tubes from Thailand.  Before the court are Plaintiffs' motions for

judgment on the agency record and Plaintiffs' unopposed motion for oral argument.  The court

decides the motions on the parties' written submissions without oral argument.[1]  For the reasons

discussed below, the court remands Commerce's Final Results for further consideration.

## ISSUES PRESENTED

1.  Whether Commerce's particular market situation adjustment is supported by

    substantial evidence and in accordance with the law;

2.  Whether Commerce conducted a fair and impartial administrative review;

---

[1] The court has broad discretion to decide dispositive motions on written submissions without oral argument.  See Rates Tech., Inc. v. Mediatrix Telecom, Inc., 688 F.3d 742, 749 (Fed. Cir. 2012) (citations omitted).

3. Whether Saha Thai exhausted its administrative remedies as to its duty drawback

   adjustment claim; and if so, whether Commerce's failure to apply a duty drawback

   adjustment to Saha Thai's cost of production for imputed Thai antidumping and

   safeguard duties on hot-rolled coil was supported by substantial evidence and

   otherwise in accordance with the law.

## BACKGROUND

Over thirty years ago, Commerce entered the antidumping duty order on circular welded

carbon steel pipes ("CWP") and tubes from Thailand.  Antidumping Duty Order; Circular

Welded Carbon Steel Pipes and Tubes from Thailand, 51 Fed. Reg. 8,341 (Dep't Commerce

Mar. 11, 1986).  Based on the petition from Defendant-Intervenor Wheatland Tube Company

("Defendant-Intervenor" or "Wheatland"), Commerce initiated an administrative review of the

antidumping duty order for the period of March 1, 2016, through February 28, 2017.  Initiation

of Antidumping and Countervailing Duty Administrative Reviews, 82 Fed. Reg. 21,513, 21,514

(Dep't Commerce May 9, 2017).  Commerce selected three Thai producers of subject

merchandise as mandatory respondents: Saha Thai, Pacific Pipe, and Thai Premium.  Plaintiffs

responded.  Pls.' Initial Questionnaire Resps., PR 31, 48–50, 52–54, and 56–57 (Aug. 17, 2017).

After Saha Thai, Pacific Pipe, and Thai Premium submitted questionnaire responses, but

before Commerce issued preliminary results, domestic producer Wheatland "allege[d] that a

particular market situation existed in Thailand during the period of review ("POR") such that the

costs of production of [CWP] are distorted and do not accurately reflect the cost of production in

the ordinary course of trade."  Wheatland Allegation 1, PR 69–71 (Feb. 5, 2018).  Wheatland

averred that: (1) the Royal Thai Government subsidized Thai producers of hot-rolled coil,

enabling its sale at below-market prices to downstream producers of CWP, and (2) the prices for

imports of hot-rolled coil into Thailand were distorted through dumping, subsidization, and global overcapacity.  Id. at 4–5.

In accepting Wheatland's submission over Saha Thai's objection, Commerce determined that Wheatland had provided new factual information in support of its particular market situation allegation and thus gave interested parties seven days for interested parties to rebut, clarify, or correct the factual information contained in Wheatland's particular market situation allegation. Particular Market Situation Request for Comments Mem. 1–2, PR 81 (Mar. 21, 2018).  Saha Thai and Pacific Pipe submitted comments.  Saha Thai Rebuttal Factual Information and Comments on Wheatland's Particular Market Situation Allegation, PR 83 (Mar. 28, 2018); Pacific Pipe Comments on Particular Market Situation Allegations, PR 84–85 (Mar. 28, 2018).

Commerce rendered its preliminary decision on April 3, 2018, which was published on April 9, 2018.  Circular Welded Carbon Steel Pipes and Tubes from Thailand, 83 Fed. Reg. 15,127 (Dep't Commerce Apr. 9, 2018) (preliminary results of antidumping duty administrative review; 2016–2017).  Commerce calculated a preliminarily weighted-average dumping margin of 0.00 percent for Saha Thai, 5.34 percent for Thai Premium, and 10.66 percent for Pacific Pipe. Id. at 15,128.  Commerce noted that it had yet to determine whether a particular market situation existed and would "consider [Wheatland's] allegations" further before issuing the final results. Decision Mem. for the Preliminary Results of Antidumping Duty Administrative Review; 2016–2017, PR 87 (Apr. 3, 2018).

Commerce issued Plaintiffs' supplemental questionnaires.  Pacific Pipe First Suppl. Questionnaire, PR 93 (Apr. 25, 2018); Saha Thai First Suppl. Questionnaire, PR 94 (Apr. 25, 2018); Thai Premium First Suppl. Questionnaire, PR 95 (Apr. 25, 2018).  The first supplemental questionnaires did not explicitly reference Wheatland's particular market situation allegation.

See id.  Plaintiffs responded.  Pacific Pipe's First Suppl. Resp., PR 101 (May 8, 2018); Saha Thai

First Suppl. Questionnaire Resp., PR 103–04 (May 14, 2018); Thai Premium First Suppl.

Questionnaire Resp., CR 98 (May 14, 2018).  Wheatland also responded and provided additional

factual information supporting its particular market situation allegation.  Wheatland's Comments

on, and Clarifying Factual Info. Regarding Pacific Pipe and Saha Thai Suppl. Questionnaire

Resps., PR 107–09 (May 17, 2018).

In the post-preliminary memorandum, Commerce found that sufficient evidence

supported Wheatland's particular market situation allegation.  Post-Preliminary Decision Mem.

on Particular Market Situation Allegation 1, PR 114 (Aug. 31, 2018) ("PPDM").  Specifically,

Commerce found that a particular market situation existed in Thailand during the period of

review as to the cost of hot-rolled coil as a component of the cost of production.  Id. at 4.

Commerce assessed that a combination of the U.S. CVD rate on Thai producers of hot-rolled coil

and the Thai AD and safeguard rates on hot-rolled coil imported into Thailand provided an

appropriate basis for an adjustment to Thai CWP producers' input costs.  Id. at 4, 6.  Commerce

then applied a particular market situation adjustment, which altered Plaintiffs' costs of

production and resulted in a weighted-average antidumping margin calculation of 28.76 percent

for Thai Premium, 24.50 percent for Saha Thai, and 10.66 percent for Pacific Pipe.  Commerce's

Post-Preliminary Decision Mem. on Wheatland's Allegation, PR 114 (Aug. 31, 2018); Analysis

Mem. for the Post-Preliminary Results Concerning Saha Thai, PR 113 (Aug. 31, 2018); Pacific

Pipe Prelim. Calc. Mem. and Particular Market Situation Adjustment Data, PR 116 (Aug. 31,

2018); Thai Premium Post-Prelim. Calc. Mem. and Particular Market Situation Adjustment Data,

PR 117 (Aug. 31, 2018);

Commerce gave interested parties seven days to file case briefs.  Briefing Schedule on All Issues Except Particular Market Situation, PR 115 (Aug. 31, 2018).  Saha Thai requested a 10-day extension on September 4, 2018.  Saha Thai Extension Request, PR 118 (Sept. 4, 2018).  Commerce granted Saha Thai's request in part and gave all interested parties an extra three days (one business day) to submit case briefs.  Mem. re Extension of Deadline to File Case and Rebuttal Briefs for All Issues, PR 121 (Sept. 6, 2018).  The next day, Pacific Pipe requested a four-day extension of the briefing schedule.  Pacific Pipe Briefing Schedule Extension Request, PR 123 (Sept. 7, 2018).  Commerce granted the request in part and enlarged the briefing schedule by three days for all parties.  Mem. re Pacific Pipe Extension Request, PR 124 (Sept. 10, 2018).  Defendant-Intervenor requested a one-day extension to file a rebuttal case brief, which Commerce granted as to all interested parties.  Mem. re Extension Request Filing Rebuttal Brs., PR 133, (Sept. 17, 2018).  Commerce held a hearing on September 27, 2018.  Hr'g Tr., PR 141 (Oct. 4, 2018).

Commerce published the Final Results on October 4, 2018.  Circular Welded Carbon Steel Pipes and Tubes from Thailand, 83 Fed. Reg. 51,927 (Dep't Commerce Oct. 15, 2018) (final results of antidumping duty administrative review; 2016–2017) ("Final Results"); see also Decision Memorandum for the Final Results of Antidumping Duty Administrative Review; 2016–2017, PR 143 (Oct. 4, 2018) ("Final IDM"); Pls.' Final Calc. Mems., PR 144, 146, 148 (Oct. 4, 2018).  In the Final Results, Commerce found that a particular market situation distorted the acquisition cost of hot-rolled coil and adjusted Plaintiffs' costs of production.  Final IDM at 8–10.  Commerce recalculated Plaintiffs' weighted-average antidumping margins to 30.98 percent for Thai Premium, 30.61 percent for Pacific Pipe, and 28.00 percent for Saha Thai.  Final Results at 51,928.

Saha Thai initiated this action challenging Commerce's <u>Final Results</u> on October 18, 2018.  Summons, Oct. 18, 2018, ECF No. 1; Compl., Oct. 18, 2018, ECF No. 6.  The court entered a statutory injunction on October 22, 2018, granted Wheatland's motion to intervene on November 15, 2018, and consolidated this case with Court Numbers 18-00219 and 18-00231 on January 30, 2019.  Order for Statutory Inj. Upon Consent, Oct. 19, 2018, ECF. No. 10; Order, Nov. 15, 2018, ECF No. 15; Order, Jan. 30, 2019, ECF No. 28.  Defendant United States ("Defendant") filed the administrative record on January 31, 2019.  Ltr. from Brandon Custard, Office of the Chief Counsel for Trade Enforcement & Compliance, Commerce, to Mario Toscano, Clerk of the Court, U.S. Court of International Trade, Jan. 31, 2019, ECF No. 29.

Saha Thai, Thai Premium, and Pacific Pipe moved for judgment on the agency record. Pl. Saha Thai's Mot. J. Agency R. and Br. in Supp. ("Saha Thai Br."), May 15, 2019, ECF No. 39; Consol. Pl. Thai Premium's Mot. J. Agency R., May 15, 2019, ECF No. 37, and Mem. in Supp. ("Thai Premium Br."), May 15, 2019, ECF No. 37-2; Consol. Pl. Pacific Pipe's Mot. J. Agency R., May 15, 2019, ECF No. 41, and Mem. of Points and Authorities in Supp. ("Pacific Pipe Br."), May 15, 2019, ECF No. 41-2.  Defendant and Defendant-Intervenor responded. Def.'s Resp. to Pls.' Mots. J. Agency R. ("Def. Resp.") July 29, 2019, ECF No. 44; Def.-Intervenor's Resp. Br. ("Def.-Intervenor Br."), July 29, 2019, ECF No. 42.  Plaintiffs replied. Saha Thai's Reply Br., Sept. 16, 2019, ECF No. 51; Thai Premium's Reply Br., Sept. 16, 2019, ECF No. 53; Pacific Pipe's Reply Br., Sept. 16, 2019, ECF No. 54.  Defendant filed the joint appendix on September 24, 2019.  J.A., Sept. 24, 2019, ECF No. 56.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).

The court will uphold Commerce's determination unless it is unsupported by substantial

evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.   Commerce's Finding of a Particular Market Situation

#### A.  Governing Law

In determining antidumping duties, Commerce calculates "the amount by which the

normal value [of subject merchandise] exceeds the export price (or the constructed export price)

for the merchandise."  19 U.S.C. § 1673.  When reviewing antidumping duties in an

administrative review, Commerce must determine "(i) the normal value and export price (or

constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin

for each such entry."  Id. § 1675(a)(2)(A).  Normal value represents the price at which the

subject merchandise is first sold in the exporting country.  See id. §§ 1677b(a)(1)(A), (B)(i).

Export price is "the price at which the subject merchandise is first sold (or agreed to be sold)" in

the United States.  19 U.S.C. § 1677a(a)).[2]

If Commerce cannot determine the normal value of the subject merchandise based on

home-market sales or third-country sales, then Commerce uses a constructed value as a basis for

normal value.  Id. § 1677b(a)(4).  Subsection (e) governs the calculation of a constructed value.

Id. § 1677b(e).  Constructed value represents: (1) "the cost of materials and fabrication or other

---

[2] Constructed export price represents "the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter . . . ." 19 U.S.C. § 1677a(b).

processing of any kind [used] in producing the merchandise;" (2) "the actual amounts incurred

and realized" for "selling, general, and administrative expenses, and for profits, in connection

with the production and sale of a foreign like product, in the ordinary course of trade, for

consumption in the foreign country[;]" and (3) the cost for packing the subject merchandise.

Id. §§ 1677b(e)(1), (e)(2)(A), (e)(3), and (e)(2)(B) (providing for the calculation of constructed

value if actual data set out in subsection (2)(A) is unavailable).

When calculating constructed value under 19 U.S.C. § 1677b(e), if Commerce finds the

existence of a particular market situation "such that the cost of materials and fabrication or other

processing of any kind does not accurately reflect the cost of production in the ordinary course of

trade, [then] [Commerce] may use another calculation methodology under this part or any other

calculation methodology."  19 U.S.C. § 1677b(e).

Section 504(c) of the Trade Preferences Extension Act of 2015 ("TPEA") amended the

statutory provision governing constructed value, 19 U.S.C. § 1677b(e).  The amendment

authorized Commerce to use alternative cost methodologies when computing constructive value

after making a particular market situation determination.  The amendment added the following

language to the statute:

> [F]or purposes of paragraph (1) [in reference to calculating
> constructed value] if a particular market situation exists such that
> the cost of materials and fabrication or other processing of any kind
> does not accurately reflect the cost of production in the ordinary
> course of trade, the administering authority [Commerce] may use
> another calculation methodology under this subtitle or any other
> calculation methodology.

19 U.S.C. § 1677b(e).  In other words, the amended statute gives Commerce discretion to adjust

the cost of production calculation methodology when determining constructed value if

Commerce finds that a particular market situation exists.  See id.  Section 504 did not amend the

statute governing the calculation of cost of production (for below-cost-sales purposes) or

application of the below-cost test set out in 19 U.S.C. § 1677(b)(3).

   **B.  Application of Particular Market Situation Adjustment**

      **1.  Commerce's Cost-Based Particular Market Situation Adjustment
           When Calculating Normal Value**

   In this case, Commerce misapplies a particular market situation adjustment to a

respondents' cost of production for purposes of the home-market sales-below-cost test.  Under

19 U.S.C. § 1677b(e), Commerce's authority to apply a particular market situation adjustment is

limited to the calculation of costs of materials and fabrication under 19 U.S.C. § 1677b(e)(1).

See 19 U.S.C. § 1677b(e) ("*For the purposes of paragraph (1)* [19 U.S.C. § 1677b(e)(1)], if a

particular market situation exists . . . the administering authority may use another calculation

methodology. . . .").  The amended statute pertains to particular market situations in the context

of constructed value, i.e., when the dumping margin calculation is based on comparing U.S.

prices to constructed value, but only when constructed value is the basis of "normal value," not

home-market sales.

   Commerce applied Section 504 in finding a particular market situation when it increased

Plaintiffs' costs of production for purposes of the home-market sales-below-cost test.  See Final

IDM at 8–10; PPDM at 4–5.  Commerce made the particular market situation adjustment after

comparing Plaintiffs' U.S. sales to home-market sales.  Final IDM at 14, 16, 18.  Yet Commerce

fails to explain how a cost of sale adjustment is appropriate when comparing U.S. sales and

home-market sales.  Analysis Mem. for the Final Results of the Antidumping Duty

Administrative Review of Circular Welded Steel Pipes and Tubes from Thailand: [Saha Thai] at

4–5, PR 146 (Oct. 4, 2018) ("Saha Thai Final Calc. Mem."); Analysis Mem. for the Final Results

of the Antidumping Duty Administrative Review of Circular Welded Steel Pipes and Tubes from

Thailand: [Thai Premium] 2–4, PR 148 (Oct. 4, 2018) ("Thai Premium Final Calc. Mem.");

Analysis Mem. for the Final Results of the Antidumping Duty Administrative Review of

Circular Welded Steel Pipes and Tubes from Thailand: [Pacific Pipe] 3–6, PR 144, (Oct. 4,

2018) ("Pacific Pipe Final Calc. Mem.").  Although Section 1677b(e), "Constructed Value,"

grants Commerce discretion to adjust a respondent's cost of production in an antidumping

margin calculation upon finding a particular market situation, that margin calculation must be

based on a comparison of U.S. prices to constructed value, not home-market sales prices or third-

country sales prices.

Section 504 did not amend 19 U.S.C. § 1677b(b)(3), which governs cost of production

calculations for determining whether home-market sales are below costs.  Neither the term

"ordinary course of trade" nor a reference to a particular market situation cost adjustment

appears in Section 1677b(b)(3).  Defendant's contention that Section 504 authorized

Commerce's comparison of U.S. prices to home-market sales instead of constructed value is an

interpretation that is unsupported in the law.  See Ad Hoc Comm. v. United States, 13 F.3d 398,

403 (Fed. Cir. 1994) ("Ad Hoc I") (When "the antidumping statute is not silent on the

question, . . . the reasonableness or fairness of Commerce's interpretation of the Antidumping

Act is irrelevant."); Thomas v. Nicholson, 423 F.3d 1279, 1284 (Fed. Cir. 2005) ("[W]here

'Congress includes particular language in one section of a statute but omits it in another section

of the same Act, it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion.'" (quoting Russello v. United States, 464 U.S. 16, 23 (1983));

see also Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992) ("We have stated time

and again that courts must presume that a legislature says in a statute what it means and means in

a statute what it says there." (citations omitted)).[3]   The court concludes that Commerce's

particular market situation adjustment is not in accordance with 19 U.S.C. § 1677b(e).

### 2. Sales-Based Particular Market Situations

In the Final Results, Commerce made a particular market situation finding and increased

Plaintiffs' costs of production.  83 Fed. Reg. at 51,928; Final IDM at 8; see also Wheatland

Allegation at 4 (alleging that "two particular market situations . . . distorted the *cost of producing*

CWP in Thailand during the POR." (emphasis added)).  Saha Thai argues that Commerce made a

cost-based particular market situation finding, which means that Commerce's findings cannot be

grounded in 19 U.S.C. § 1677(15) (defining "ordinary course of trade") because a sales-based

particular market situation adjustment under 19 U.S.C. § 1677(15) is distinct from a cost-based

particular market situation adjustment under 19 U.S.C. § 1677b(e).  Saha Thai Br. at 15–19.

Defendant argues the TPEA "generally expanded the meaning of 'ordinary course of trade' to

include any situation in which Commerce finds that a particular market situation prevents a

proper comparison between markets."  Def. Resp. at 20 (citing 19 U.S.C. § 1677(15)(C)).

Section 504(a) amended 19 U.S.C. § 1677(15), allowing Commerce to consider certain

"sales and transactions . . . to be outside the ordinary course of trade" when a "particular market

---

[3] Defendant and Defendant-Intervenor argue that Commerce's particular market situation adjustment to Plaintiffs' costs of production is entitled to deference under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–42 (1984).  Def. Resp. at 11–12, 26; Def.-Intervenor Br. at 8, 11–16.  Defendant and Defendant-Intervenor's contention is incorrect because Congress has spoken directly to the precise question at issue: how to calculate the cost of production for purposes of the sales-below-cost test.  The TPEA amended 19 U.S.C. § 1677b(b)(e)—the definition of constructed value.  The TPEA did not amend 19 U.S.C. § 1677b(b)(3)—the applicable statute governing the calculation of cost of production for below-cost-sales—and Section 1677b(b)(3) contains no reference to a "particular market situation" finding.  Commerce's particular market situation adjustment runs contrary to the plain meaning of the statute as to how Commerce must calculate the cost of production for purposes of the sales-below-cost test.  See Apex Frozen Foods Private Ltd. v. United States, 862 F.3d 1322, 1329 (Fed. Cir. 2018).

situation prevents a proper comparison with the export price or constructed export price."  19

U.S.C. § 1677(15)(C).

In the underlying administrative review, Commerce found a particular market situation

and adjusted Plaintiffs' costs of production by applying the particular market situation

adjustment to Commerce's home-market sales calculation.  See Final IDM at 8–10.  Commerce's

cost-based particular market situation adjustment does not implicate a sales-based particular

market situation in the underlying administrative review.  See 19 U.S.C. § 1677(15); 19 U.S.C.

§ 1677b(e).  The record shows that Commerce distinguished between a sales-based and cost-

based particular market situation at the administrative level.  Wheatland made a cost-based

particular market situation allegation.  Wheatland Allegation at 1–2 ("[W]e hereby allege that a

particular market situation existed in Thailand . . . such that the costs of production of . . . are

distorted.  We therefore request Commerce use an alternative methodology to calculate

constructed value.").  When accepting Wheatland's particular market situation allegation over

Saha Thai's objection as being untimely, Commerce reasoned that its "regulations provide[d] a

deadline for the submission of a sales-based [particular market situation] . . . [but] no such

provision exist[ed] for the TPEA's cost-based [particular market situation] allegation."  Final

IDM at 5.

Commerce's argument here conflates the sales-based versus cost-based particular market

situation provisions in the statute.  The court rejects this post hoc rationalization for the Final

Results.  The TPEA did not provide a basis for calculating the cost of production in the sales-

below-cost test.  That Congress explicitly amended the sales-below-cost provision for a different

purpose shows that Congress was aware of the sales-below-cost calculation when it enacted the

TPEA.  Section 505(a)(A).  Further, Congress amended the sales-below-cost provision and did

not make a cross-reference between 19 U.S.C. § 1677(15) and 19 U.S.C. § 1677b(e), which

shows that Congress did not intend for Commerce to apply 19 U.S.C. § 1677(15)(C) in the

manner Commerce proposes.

Because Commerce chose to make a comparison between home-market sales and U.S.

price, Commerce may not apply a cost-based particular market situation adjustment in the

context of this sales-based comparison.  See Final IDM at 8–15.  Commerce's post hoc

rationalization does not support the Final Results.  The court concludes that Commerce's

particular market situation adjustment is not in accordance with the law.

### 3.  Conclusion

Because the court determines that the particular market situation adjustment was not in

accordance with the law, the court need not decide whether substantial evidence supports

Commerce's particular market situation adjustment.  The court remands the Final Results for

further consideration consistent with this opinion.

### II.    Commerce's Actions When Conducting the Antidumping Review

Saha Thai contends that Commerce did not conduct the underlying administrative review

in a fair and impartial manner.  Saha Thai Br. at 40–52.  First, Saha Thai claims that Commerce

departed from its two-step approach taken in prior cases when examining a cost-based particular

market situation allegation.  Id. at 41–44.  Second, Saha Thai avers that Commerce showed bias

because Commerce: (1) accepted Wheatland's May 17, 2018 factual submission even though it

was untimely and contained new factual information about the particular market situation

allegation that neither rebutted, clarified, nor corrected another interested party's questionnaire

response, and (2) failed to give interested parties a meaningful opportunity to offer information

on Thai antidumping and safeguard duties applied to purchases of hot-rolled coil during the period of review when setting a case briefing schedule.  Id. at 44–48.

Defendant responds that Commerce conducted the underlying administrative review fairly and provided interested parties sufficient time to comment on, and for Commerce to obtain, information as to Wheatland's particular market situation allegation.  Def. Resp. at 47–49.  Defendant also argues that the governing federal regulation, 19 C.F.R. § 351.309(c)(1)(ii), allows Commerce to modify the 30-day deadline in filing case briefs after publication of the preliminary results of review.  Id. at 49–50.  Defendant avers that Commerce could consider Wheatland's factual submission because it rebutted, clarified, or addressed Saha Thai's supplemental response as to "input purchases and tax and duty on such purchases, and calculations including the duty rates applicable to [hot-rolled coil] imported from certain countries during the period of review."  Id. at 48 (citations omitted).  Because the court has remanded to Commerce for reconsideration of its particular market situation adjustment, the court need not reach this issue.

### III.   Saha Thai's Duty Drawback Adjustment Argument

Saha Thai argues that Commerce should have made a duty drawback adjustment for "imputed Thai AD and safeguard duties that [Commerce] calculated on Saha Thai's purchased [hot-rolled coil] pursuant to its [particular market situation] adjustment methodology."  Saha Thai Br. at 53–54.  Wheatland responds that Saha Thai failed to exhaust its administrative remedies because Saha Thai raised the duty drawback argument as a ministerial error, and not in Saha Thai's case brief before Commerce.  Def.-Intervenor Br. at 8–10; Ministerial Error Mem., PR 162 (Dec. 20, 2018).  Defendants assert that Saha Thai's duty drawback argument falls beyond the nature of a ministerial error as defined in 19 C.F.R § 351.224.  Def. Resp. at 50;

Def.-Intervenor Br. at 10.  Defendants contend there is no merit to Saha Thai's duty drawback

claim because record evidence supports Commerce's determination that Saha Thai was ineligible

for the duty drawback adjustment requested in its ministerial error comments.  Def. Resp. at 51–

54; Def.-Intervenor Br. at 10–11.  Because the court remands for reconsideration of Commerce's

particular market situation adjustment, the court need not address the issue of whether substantial

evidence supports the duty drawback adjustment at this time.

## CONCLUSION

For the foregoing reasons, the court concludes that Commerce's particular market

situation adjustment is not in accordance with the law and remands for further consideration

consistent with this opinion.  An order will issue accordingly.

        /s/ Jennifer Choe-Groves
        Jennifer Choe-Groves, Judge

Dated:  December 18, 2019
        New York, New York